## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

DANIEL R. BILLIMAN,

      Plaintiff,

v.                                                                          Civ. No. 16-72 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

### <u>ORDER</u>

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand to Agency for a Rehearing, With Supporting Memorandum" ("Motion"), filed on September 29, 2016.  ECF No. 24.  The Commissioner responded on December 29, 2016.  ECF No. 28. Plaintiff replied on January 12, 2017.  ECF No. 29.  Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**.  Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.      BACKGROUND

Plaintiff was born on October 19, 1962, in Fort Defiance, Arizona.  Administrative R. ("AR") 311-12.  He graduated from Window Rock High School in neighboring Window Rock, Arizona, in 1984.  AR 312.[1]  From 1993 to 2011, he held semi-continuous employment in general labor and janitorial maintenance positions.  AR 22, 209, 234.  Plaintiff's last employment

---

[1] At a consultative psychological examination with Dr. Carl Adams, Ph.D., Plaintiff reported graduating from Window Rock High School in Window Rock, Arizona.  Administrative R. ("AR") 312.  In a separate, undated Disability Report, Plaintiff reported attending Fort Defiance High School in Fort Defiance, Arizona, and attending special education classes.  AR 245.

as a janitor with Gallup Catholic Schools ended on September 16, 2011, when the contract for the position terminated.  AR 22, 312.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 22, 2012.  AR 29.  Plaintiff claimed disability beginning on September 16, 2011, based on arthritis, a dislocated hip, insomnia, migraines, and acid reflux. AR 244.  The Social Security Administration ("SSA") denied Plaintiff's application initially on October 15, 2012, and upon reconsideration on March 29, 2013.  AR 52, 65.  At his request, Plaintiff received a *de novo* hearing before ALJ Ann Farris on April 30, 2014, at which Plaintiff and his attorney appeared.[2]  AR 16-28.  On August 5, 2014, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  AR 82-91.  Plaintiff appealed to the SSA Appeals Council, but it declined review on December 5, 2015. AR 1-3.  As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed his appeal with this Court on February 2, 2016.  ECF No. 1.

## II.    PLAINTIFF'S CLAIMS

Plaintiff advances three grounds for relief.  First, he argues that the ALJ erred by improperly evaluating the opinion of his treating physician, thereby rendering Plaintiff's residual functional capacity ("RFC") finding legally infirm.  Pl.'s Mot. 5-9, ECF No. 24.  Second, he contends the ALJ failed to develop the record regarding his nonexertional limitations and to incorporate these limitations into his RFC, which resulted in a subsequent misapplication of the SSA "grids."  *Id.* at 10-15.  Lastly, he alleges that the SSA Appeals Council incorrectly declined to review relevant evidence.  *Id.* at 15-19.

---

[2] Plaintiff's representative, alternatively referred to as Ms. Steel and Ms. Steels in the transcript of the oral hearing, is referred to as Plaintiff's attorney in the same transcript.  *See* AR 16-21.

## III.   APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3]   The Court's review of that final agency decision is both factual and legal.   *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).   "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."   *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence.   *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).   A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084.  The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.  Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017).  At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1.  If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work.  *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If a claimant is not prevented from performing his past work, then he is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*,

814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.     THE ALJ'S DECISION

The ALJ issued her decision on August 5, 2014. AR 91. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 16, 2011. AR 84. At step two, the ALJ found Plaintiff's bilateral osteoarthritis of the knees and lumbar degenerative disc disease to be severe impairments. AR 84. In contrast, the ALJ found Plaintiff's headaches, right hip pain, acid reflux, left elbow pain, personality disorder (not otherwise specified), and somatoform disorder to be non-severe. AR 85.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 85-87. The ALJ began with Plaintiff's personality disorder, which she considered under "the four broad functional areas set out in the disability regulations for evaluating mental disorders" and in Listing 12.00(C).[4] In the first functional area, activities of daily living ("ADLs"), the ALJ found Plaintiff had only a mild limitation, as he has "no problem with personal care needs" and performs a wide variety of ADLs. AR 86. In the second area,

---

[4] Listing 12.00(C) does not refer to a specific mental impairment, but rather, to the types of evidence that the SSA considers in evaluating all mental disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 12.00(C) (2016). This includes evidence from, *inter alia*: (1) acceptable medical sources; (2) those who know the claimant, especially regarding a claimant's activities of daily living; (3) school and work; (4) sources demonstrating longitudinal evidence of a mental disorder; and (5) sources substantiating a claimant's faculty for functioning in unfamiliar and in supportive situations. *Id.*

social functioning, the ALJ found that Plaintiff had "no limitation," based on his positive interactions with peers and supervisors and his interview with consultative psychologist Dr. Carl Adams, Ph.D.  AR 86.  Third, as to Plaintiff's concentration, persistence, and pace, the ALJ found Plaintiff had only a mild limitation.  She explained that Plaintiff "does not allege difficulty understanding and following instructions, remembering things, or completing tasks," and that when examined by Dr. Adams in October 2012, he was "able to attend and concentrate."  AR 86. Lastly, regarding episodes of decompensation, the ALJ found "little in the record suggesting the claimant has experienced such an episode."  AR 86.  Thus, because Plaintiff's "medically determinable impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration," the ALJ found that Plaintiff's mental impairments were both non-severe and insufficient to qualify as presumptively disabling under a relevant Listing.  AR 86-87.

Next, the ALJ considered Plaintiff's physical impairments under relevant Listings.  She began with Listing 1.02 for major dysfunction of a joint.  To meet that Listing, Plaintiff would have had to establish that his osteoarthritis or hip pain "resulted in an inability to ambulate effectively."  AR 87.  At a physical evaluation in May 2014, however, Plaintiff "demonstrated the ability to walk with only a minimally antalgic gait."  AR 87.  Accordingly, the ALJ found Plaintiff did not meet or medically equal the requirements of Listing 1.02.

Additionally, the ALJ considered Plaintiff's lumbar degenerative disc disease under Listing 1.04 for disorders of the spine.  The ALJ explained that, to qualify under that Listing, "a claimant must show a disorder of the spine resulting in compromise of a nerve root or spinal cord."  AR 87.  Moreover, a qualifying claimant must also demonstrate one of the following: "evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in

pseudoclaudication, with an inability to ambulate effectively." AR 87. The ALJ found none of these present in Plaintiff, as a magnetic resonance imaging ("MRI") scan performed on May 30, 2014, provided "no evidence of stenosis." AR 87. At his physical evaluation that same month, Plaintiff was also able to ambulate "with only a minimally antalgic gait." AR 87. Taken in tandem, this evidence led the ALJ to conclude that Plaintiff's impairment "does not meet or medically equal [L]isting 1.04." AR 87.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 37-42. "After careful consideration of the entire record," the ALJ determined that "[Plaintiff] has the residual functional capacity to perform the full range of light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). AR 87.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, opining that Plaintiff's "allegations regarding the disabling effects of his impairments are not entirely credible." AR 88. The ALJ discerned multiple "inconsistencies in the record" and summarized them thus:

> Despite alleging disabling symptoms, [Plaintiff] has no problem with his personal care needs. He is also able to prepare complete meals, do house work, chop wood, clean his yard, leave the house alone, drive, go shopping, pay bills, count change, handle a savings account, [ ] use a checkbook . . . [and] is able to walk up to a mile before having to stop and rest.

AR 87. Collectively, the ALJ found "[t]hese abilities [to be] inconsistent with allegations of disability." AR 88. In addition, the ALJ discussed the consultative report prepared by Dr. Adams in October 2012, which documented Plaintiff getting up from a chair without difficulty, carrying a large satchel with ease, and walking down a hall with virtually no pain behavior, but, when placed in an examination room and aware of the examiner's presence, Plaintiff began

exhibiting "exaggerated grunts and groans." AR 88 (quoting AR 311). Plaintiff's conduct led Dr. Adams to conclude that Plaintiff's "verbalized complaints [were] inconsistent with his behavioral presentation." AR 88 (quoting AR 311). Lastly, the ALJ reflected on Plaintiff's administrative hearing testimony, which included his admission that he quit working not due to a disability, but because "his contract ran out." AR 88. *See* AR 22.[5] This, too, "further reduced" Plaintiff's credibility, and "taken together" with other facts in the record, resulted in the ALJ finding that Plaintiff's "allegations regarding the disabling effects of his impairments are not entirely credible." AR 88.

Along with Plaintiff's adverse credibility finding, the ALJ also relied on the medical evidence of record to determine Plaintiff's RFC. Following her review, the ALJ opined that "the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations resulting from his severe impairments." AR 88. Specifically, she documented Plaintiff's treatment both for knee and back pain from 2012 through 2014. *See* AR 88-89. Even in records post-dating his administrative hearing by one month,[6] the ALJ noted that Plaintiff's gait was "minimally antalgic," and that he "displayed full range of motion." AR 89. Moreover, in May 2014, an MRI taken of Plaintiff's lower back showed a[n] L5-S1 annular tear[7] with multilevel loss of disc height," but the ALJ highlighted that "no stenosis was present."[8] AR 89 (citing AR 399-402).

---

[5] When asked by the ALJ why he quit his last job position, Plaintiff replied, "[t]he contract ended." AR 22.

[6] Plaintiff's administrative hearing was held on April 30, 2014. The ALJ allowed the record to remain open so that Plaintiff could file and she could review the records from Plaintiff's MRI in May 2014 [AR 22], and as a result, the ALJ was able to incorporate medical evidence generated subsequent to the hearing into her opinion.

[7] An annular tear occurs when the tough exterior of an intervertebral disc (the annulus fibrosus) rips or tears. *See* https://www.laserspineinstitute.com/back_problems/annular_tear/ (last visited Mar. 6, 2017).

[8] Spinal stenosis is a narrowing of the open spaces within the spine, which can put pressure on the spinal cord and the nerves that travel through the spine to the arms and legs. Spinal stenosis occurs most often in the lower back and

The ALJ closed her RFC analysis by discussing the medical opinions in the record.  First, she accorded great weight to the opinion of consultative examining psychologist Dr. Carl Adams, who "stated the [Plaintiff] does not have a severe mental impairment."  AR 89.  Next, she assigned "some weight" to the opinion of Dr. Sterling Moore, M.D., the non-examining state medical consultant, "who stated [Plaintiff] can perform light work with some postural limitations."  AR 89.  Finally, the ALJ discounted the opinion of Plaintiff's treating physician, Dr. Dylan Stentiford, M.D.  In a "Physical Capacities Evaluation" completed by Dr. Stentiford on June 7, 2013 [AR 364-365], he concluded that Plaintiff could "sit for no more than 2 hours per day and stand or walk for no more than four hours per day."  AR 90.  Moreover, Dr. Stentiford "limited [Plaintiff] to lifting at the sedentary extertional level."  AR 90.  Although the ALJ acknowledged that "[a] treating physician's opinion is usually entitled to some weight," she found "little to no support in the medical evidence" for Dr. Stentiford's opinion.  AR 90.  She reasoned that "x-rays of [Plaintiff's] hip showed no abnormalities," and "[x]-rays [of Plaintiff's knees] found only early degenerative changes."  AR 90 (citing AR 332, 334-35).  Similarly, the ALJ observed that "despite [Plaintiff's] complaints of disabling knee pain, [Plaintiff] exhibited good range of motion in the joint."  AR 90 (citing AR 333).  Most importantly, the ALJ found that Dr. Stentiford's "treatment notes do not support the degree of limitation in his medical source statement."  AR 90.

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  AR 90.  Accordingly, the ALJ proceeded to step five.  Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy.  AR 90.  No specific job titles or descriptions were

---

the neck.  *See* http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/definition/con-20036105 (last visited Mar. 6, 2017).

given for these jobs, as the ALJ found Plaintiff capable of "the full range of light work."  AR 91.

Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Act,

during the relevant time period and denied his claim.  AR 91.

## V.   ANALYSIS

As set forth below, Plaintiff has failed to marshal sufficient support from facts or case

law to establish that the ALJ applied incorrect legal standards or that her decision is unsupported

by substantial evidence.  Consequently, his Motion must be denied.  The Court's reasoning as to

each of Plaintiff's three claims will be discussed *seriatim*.

### A.  The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician

Plaintiff raises two objections to the ALJ's treating physician analysis.  First, Plaintiff

questions the evidentiary basis for Plaintiff's RFC, arguing that "the ALJ failed to support

[Plaintiff's] RFC finding with substantial evidence, and in so doing improperly rejected a

treating doctor opinion."  Pl.'s Mot. 5.  He notes how "[the ALJ] stated she gave treating Dr.

Stentiford's opinion little weight because the opinion finds little to no support in the medical

evidence."  *Id.* at 9.  But he takes exception to the ALJ's citation to "one hip x-ray that showed

'no abnormalities' and one record that [Plaintiff] had good range of motion in his knee joint."

*Id.*   These citations notwithstanding, Plaintiff contends that the ALJ "failed to discuss other

evidence, including the MRI [which] showed an annular tear at L5-S1 with multilevel loss of

disc height, as well as severe chondromalacia[9] and degenerative changes in the right knee."  *Id.*

(citing AR 402, 407).

---

[9] "Often called 'runner's knee;' chondromalacia patella is a common condition causing pain in the kneecap . . . [t]he pain is caused by an irritation of the undersurface or patella of the kneecap as the kneecap rubs against one side of the knee joint, irritating the cartilage surface."  *See* https://www.cedars-sinai.edu/Patients/Health-Conditions/ Chondromalacia.aspx (last visited Mar. 23, 2017).

Additionally, Plaintiff argues that the ALJ's treating physician analysis is legally deficient.  He reasons that "Social Security regulations require the ALJ to give the opinion of treating physicians controlling weight when the opinion is well-supported by the medical evidence and consistent with the record."  *Id.* at 8.  He also describes that "[i]n assessing Dr. Stentiford's opinion, [the ALJ] was required to follow two distinct steps," but by Plaintiff's estimation, the ALJ erred at both.  *Id.* at 8-9.

The Commissioner responds that the ALJ "gave good reasons for discounting" Dr. Stentiford's opinion, "noting that it was inconsistent with objective medical evidence in the record and inconsistent with his own treatment notes."  Def.'s Resp. 8, ECF No. 28.  She also characterizes Dr. Stentiford's recommendations as "work-preclusive, outlier limitations," *id.*, and contrasts them with the same portions of the record highlighted by the ALJ.  *See id.* at 8-9.  The Commissioner emphasizes that the ALJ properly performed the two steps of the treating physician analysis, even though the ALJ did not expressly cite all of the regulatory factors.  In defending the ALJ, the Commissioner also cites authority for the proposition that the ALJ "is not required to 'apply expressly' every factor in the regulations."  *Id.* at 9 (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

### 1.  The treating physician rule

Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *Langley*, 373 F.3d at 1119).  *See* 20 C.F.R. § 404.1527(d)(2) (2016) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner); 20 C.F.R. § 416.927(d)(2) (2016) (same).  In analyzing whether

11

a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2) and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight." *Id.* (citation omitted). If the opinion is deficient in either of these respects, however, it is not to be given controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. This inquiry is governed by its own set of factors, which include:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). While an ALJ must consider these factors, she need not expressly discuss each of them in her opinion. *Oldham*, 509 F.3d at 1258; SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Rather, "the ALJ must make clear how much weight the opinion is being

given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citing *Watkins,* 350 F.3d at 1300–01). Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

### 2. The ALJ did not misapply the treating physician rule

The Court concludes that the ALJ's treating physician analysis is both free of legal error and supported by substantial evidence. Procedurally, the record refutes Plaintiff's claim that "the ALJ did not provide the requisite [treating physician] analysis." Pl.'s Reply 2, ECF No. 29. Under governing regulations and case law, the ALJ was required to undertake a two-step inquiry to determine if Dr. Stentiford's opinion should be assigned controlling weight. This, the ALJ did. At the first step, she determined that Dr. Stentiford's opinion was both unsupported by clinical diagnostic techniques and inconsistent with other medical evidence in the record. *See Krauser*, 638 F.3d at 1330 (providing that in the "initial determination" of the treating physician analysis, "an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record . . . [but], [i]f the opinion is deficient in either of these respects, it is not to be given controlling weight") (internal citations omitted). Specifically, she found that Dr. Stentiford's opinion "finds little to no support in the medical evidence." AR 90.

Having found Dr. Stentiford's opinion to be unsupported by clinical diagnostic techniques and inconsistent with the medical record, the ALJ assumed two concomitant obligations. *See Krauser,* 638 F.3d at 1330. First, she became bound to *refuse* Dr. Stentiford's opinion controlling

weight, and second, she assumed the responsibility of deciding what lesser weight, if any, to assign Dr. Stentiford's opinion based on the six *Watkins* factors. *See Watkins*, 350 F.3d at 1301. *See also* 20 C.F.R. § 404.1527 (2016) (codifying these factors).[10]   Although the ALJ was required to consider the six *Watkins* factors, *see supra* p. 12, she was not bound to discuss each in her opinion.  *See Oldham*, 509 F.3d at 1258; SSR 06-3P, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").  Indeed, rather than a formulaic recitation of the regulatory factors, what *Watkins* demands is "that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509.F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).  Put another way, the ALJ must "provide[ ] good reasons" in her decision for the weight she gives treating source opinions.  *Id.*

Here, the ALJ expressly premised her rejection of Dr. Stentiford's opinion on its unsupportability (the third *Watkins* factor) and its internal inconsistency (the fourth *Watkins* factor).  *See Watkins* 350 F.3d at 1301.  The ALJ supported these findings with a detailed account of Plaintiff's treatment by Dr. Stentiford and other medical professionals, which included citations to contrary, well-supported evidence.  AR 88-90.  For example, the ALJ explained that while Dr. Stentiford believed Plaintiff could only sit or stand for two hours and stand or walk for four hours, an MRI taken of Plaintiff's hip "showed no abnormalities."  AR 90 (citing AR 332).  Likewise, the ALJ highlighted that an MRI of Plaintiff's spine revealed an annular tear in one of his discs, but no signs of stenosis.  AR 89 (citing AR 399-402).  She also noted that despite Plaintiff's complaints of disabling knee pain, x-rays of his right knee showed

---

[10] The regulations that currently govern the analysis of treating physician opinions have been superseded.  For claims filed after March 27, 2017, the rules in 20 C.F.R. § 404.1520c (2017) will apply.

only early degenerative changes, and the joint retained good range of motion.  AR 90 (citing AR 333-35).

These references, coupled with the ALJ's observations concerning Dr. Stentiford's unremarkable physical exams of Plaintiff, satisfy the analysis demanded by *Watkins* and *Oldham*.  Moreover, the ALJ's references to the record make patent that she *considered* all the relevant *Watkins* factors,[11] even if she only *discussed* the two mentioned above.  *See Watkins*, 350 F.3d at 1301.  Based on the above, this Court finds the ALJ's reasoning for according Dr. Stentiford's opinion little weight "sufficiently specific" to make clear to this Court and subsequent reviewers the weight she assigned and the reasons for that weight.  *Oldham*, 509 F.3d at 1258.  Consequently, the Court cannot find error in the ALJ's decision to discount the treating physician's opinion.

Whether the Court would have evaluated Dr. Stentiford's opinion differently if it were the original fact finder or were reviewing the evidence *de novo* is not the question.  It is not the proper role of this Court to substitute its judgment for that of the ALJ.  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  Therefore, the Court must refuse Plaintiff's implicit invitation to reweigh the evidence.  The Court's role is confined to determining whether the ALJ erred as a matter of law in her treatment of Dr. Stentiford's opinion.  The Court finds no such error, and moreover, the Court finds that substantial evidence exists to support the ALJ's RFC determination.  Accordingly, Plaintiff's first allegation of error fails.

---

[11] The ALJ considered, without overtly discussing, the length and frequency of Dr. Stentiford's treatment relationship with Plaintiff, along with the types of examinations performed and type of treatment provided.  *See* AR 87-89.  The ALJ was also clearly aware that Dr. Stentiford was a general practitioner, as she referred to him as such, and contrasted this with specialists to whom Plaintiff was referred.  *See* AR 89.  Lastly, the ALJ considered other factors that tended to contradict Dr. Stentiford's opinion, including Plaintiff's lack of credibility.  *See* AR 88.

**B.  The ALJ Properly Addressed Plaintiff's Mild Mental Restrictions**

For his second claim, Plaintiff alleges multiple faults with the ALJ's treatment of his mild mental restrictions.  Principally, he argues that the ALJ improperly failed to find nonexertional mental limitations and include them in his RFC.  *See* Pl.'s Mot. 11-13.  As corollaries to this claim, Plaintiff also asserts that the ALJ failed to properly develop the record regarding his anxiety, and that she further failed to properly apply the Medical-Vocational Guidelines, also known as "grids," to his case.  *See id.* at 13-15.  A careful inspection of the record refutes these complaints.

**1.  The ALJ committed no error by failing to find severe mental limitations**

As his central argument, Plaintiff asserts that "[t]he ALJ erred by failing to find nonexertional limitations and including them in the RFC analysis."  Pl.'s Mot. 13.  He reasons that the ALJ's assignment of "great weight" to the opinions of the non-examining consultative psychologists – who unanimously found Plaintiff to *not* suffer from severe mental impairments – constitutes reversible error.  *See id.* at 11.  He bases this assertion on the ALJ's statement that the psychologists' findings were "consistent with other evidence of record, such as the lack of psychiatric specialist treatment."  *Id.*  To buttress this point, he directs the Court to two unpublished Tenth Circuit cases for the proposition that lack of treatment for an impairment does not necessarily demonstrate the lack of said impairment.  *See id.* (citing *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished); *Fleetwood v. Barnhart*, 211 F. App'x, 736, 739 (10th Cir. 2007) (unpublished)).  Additionally, Plaintiff reminds the Court that "the opinions of agency physicians who have never examined the claimant are generally entitled to the least weight of any medical opinion."  *Id.* at 12.  He then concludes by directing the Court to the diagnosis of Dr. Adams, the consultative examining psychologist, who opined that Plaintiff

16

suffered from "a pain disorder with predominantly psychological factors, somatoform disorder, factitious disorder with predominantly psychological factors, and a personality disorder."  *Id.* (citing AR 313).

The Commissioner urges the Court to reject Plaintiff's claim.  "At the outset," she declares, "[Plaintiff] overlooks the analysis of his alleged mental impairments at step two of the sequential evaluation process."  Def.'s Resp. 10.  The Commissioner explains that "the ALJ applied the agency's special technique for evaluating mental impairments," and "identified mild or no limitations in the four broad areas of functioning relevant for this inquiry."  *Id.* at 11.  Then, based on the text of 20 C.F.R. § 404.1520a(d)(1),[12] she argues that the ALJ properly found Plaintiff's mental impairments to not be severe.  *See id.*  The Commissioner closes by highlighting that the ALJ "is entitled to rely on the opinions of state agency medical consultants," and more importantly, that "neither Dr. Adams *nor any other medical source* endorsed mental limitations" for Plaintiff.  *Id.* at 12 (emphasis added).

On this issue, the Commissioner prevails.  To accept Plaintiff's position, this Court would have to ignore entire sections of the ALJ's opinion, in particular the nearly two pages she devotes to rating Plaintiff's mental impairments as dictated by 20 C.F.R. § 404.1520a(d)(1).  *See* AR 85-87.  This, the Court cannot do.  Instead, the Court has considered the ALJ's assessment of Plaintiff's mental impairments according to the four functional areas required by regulation, and found it to be supported by substantial evidence.

The Court also cannot endorse Plaintiff's desire to discount the ALJ's mental impairment analysis *in toto* based on one harmless defect.  Based on Tenth Circuit authority, albeit

---

[12] The regulation provides: "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1) (2016).

unpublished, the Court will assume that the ALJ erred in finding the non-examining consultative psychologists' opinions to be "consistent with other evidence of the record, *such as lack of psychiatric specialist treatment*."   *See* Pl.'s Mot. 11 (citing AR 89) (emphasis added).   *See Grotendorst*, 370 F. App'x at 883 (finding that lack of treatment does not necessarily indicate the absence of an impairment or functional limitations).   Had the ALJ focused her finding of mild mental impairments solely on Plaintiff's lack of treatment by specialists, or moreover, if the evidence from the non-examining consultative psychologists constituted the only evidence of the non-severity of Plaintiff's mental impairments, the Court's ruling might well be different.   But, that is not the case.   This singular, harmless error in the ALJ's logic is but only one component of an extensive analysis that led the ALJ to discount Plaintiff's mental impairments.   Even as to the non-examining consultative psychologists, the ALJ gave other reasons for assigning great weight to their opinions, including their familiarity with the SSA disability determination program and the consistency of their opinion with other evidence of record, of which the improper "lack of psychiatric specialist treatment" was but only a single factor.

Furthermore, despite Plaintiff's reliance on the opinion of Dr. Adams and the *Grotendorst* and *Fleetwood* cases, these sources actually demonstrate the infirmity of Plaintiff's claim.   First, the opinion of Dr. Adams is a patent rejection of both Plaintiff's credibility and the extent of his symptoms.   While Plaintiff cites approvingly to Dr. Adams's diagnosis of "pain disorder with predominantly psychological factors" and "factitious disorder with predominantly psychological factors," these diagnoses can hardly be read as supporting his case for disability when read in light of his entire report.   *See* Pl.'s Mot. 12; AR 313.   To the contrary, Dr. Adams expended significant effort in chronicling the wide divergence between Plaintiff's purported symptoms and his actual presentation.   Dr. Adams described his first observation of Plaintiff as follows:

18

> He was first observed in the reception room.  He got up from his chair without difficulty.  He carried a large satchel with papers with him, and he exhibited virtually no pain behavior walking down the hall.  As soon as we arrived in the consultation room and he was aware the examiner was observing him, there were exaggerated grunts and groans and some stretches.

AR 311.  He noted that Plaintiff "has a laundry list of complaints, and the more he talks about them, the longer it gets; however, his verbalized complaints are inconsistent with his behavioral presentation, and *he is not aware of that*."  AR 311 (emphasis added).  As to Plaintiff's vocational history, Dr. Adams recorded that Plaintiff "has a detailed story of why he left each of his jobs and had various excuses and reasons, *none of which were his fault*."  AR 312 (emphasis added).  Ultimately, and most relevant for this portion of the Court's opinion, Dr. Adams concluded that Plaintiff "has no limitations with detailed or short and simple instructions, no limitations with concentration and task persistence, and no reported limitations interacting with coworkers and supervisors."  AR 313.  Despite Plaintiff's claims, Dr. Adams's report hardly supports his claim of severe mental impairments.

Similarly, Plaintiff's legal citations only serve to contrast the instant matter from those situations where insufficient analysis by an ALJ would properly dictate reversal.  More specifically, both cases cited by Plaintiff were reversed based on the ALJ's complete failure to conduct the mental limitations analysis dictated by statute.  In *Grotendorst*, the Tenth Circuit took a dim view of the ALJ concluding that the claimant's "anxiety and depression were not severe without first making the required findings regarding how limited [the claimant] was in each of the four broad functional areas."  370 F. App'x at 882.  Likewise, in *Fleetwood*, the Tenth Circuit concluded "that the ALJ failed to provide sufficient analysis and reasoning to support his decision that [the claimant] did not have a severe mental impairment."  211 F. App'x at 739.  The *Fleetwood* court reasoned that the ALJ's "conclusory statement that [the claimant] does not have

a severe mental impairment and that she has not obtained psychiatric treatment fails to conform to the Tenth Circuit requirement that the ALJ provide reasoning for his decision so that judicial review is both possible and meaningful." *Id.* (citing *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)).

In the instant cause, the ALJ performed the analysis mandated by SSA regulations for Plaintiff's mental impairments, and found them to be non-severe. Although one portion of the ALJ's reasoning was error, that error was clearly harmless when viewed in the context of the totality of the ALJ's inquiry. Consequently, the Court finds that substantial evidence supports the ALJ's finding of non-severity regarding Plaintiff's mental impairments, and that what legal error occurred in the ALJ's analysis is harmless. The Court therefore will deny this claim.

### 2.   The ALJ did not neglect her duty to develop the record

In an alternative iteration of his argument for finding more severe mental limitations, Plaintiff also alleges that the ALJ "should have inquired further into [the] functional limitations caused by [his] pain and his mental health." Pl.'s Mot. 13. He reasons that "the ALJ asked [Plaintiff] not one question about how his anxiety affects his functioning, in spite of multiple discussions of his anxiety, and multiple medication refills for it, by treating doctors." *Id.* He also claims that his representation at the administrative hearing by a non-attorney representative triggered a heightened responsibility for the ALJ to "assiduously develop the record." *Id.* Finally, he concludes, "[t]he ALJ's failure to develop the record requires reversal and remand for rehearing." *Id.* at 14.

The Commissioner responds that Plaintiff's hearing representative "mentioned his alleged anxiety disorder in her opening statement to the ALJ but did not ask [Plaintiff] any questions on the subject." Def.'s Resp. 12. Further, she notes that the ALJ "left the record open

for 21 days after the hearing so [Plaintiff's] representative could submit additional evidence." *Id.* Lastly, the Commissioner highlights that "the record contained Dr. Adams's consultative report addressing [Plaintiff's] alleged mental impairments, and [Plaintiff's] appellate counsel has not identified what other evidence the ALJ should have sought." *Id.* at 13.

The Commissioner bears an affirmative duty to develop the record. *Lamb v. Barnhart*, 85 F. App'x 52, 57 (10th Cir. 2003) (unpublished) ("The ALJ must ensure that a sufficient record exists to evaluate [the claimant's] exertional and nonexertional limitations.") (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). Furthermore, the ALJ's duty to develop the record is heightened in the absence of counsel. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Nevertheless, this duty is not triggered where sufficient evidence exists in the record to make a disability determination. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). A claimant establishes the presence of an issue requiring further investigation by submitting "some objective evidence . . . suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Here, the Court cannot find fault with the ALJ's development of the record. The Court is cognizant of Plaintiff's claim that he proceeded at the administrative level with only a non-attorney representative, but the record reflects that his representative was an attorney [AR 16-21], and in any event, his representative did bring the issue of his anxiety before the ALJ. *See* AR 20. Furthermore, despite Plaintiff's belief that the ALJ should have asked Plaintiff "about how his anxiety affects his functioning," Pl.'s Mot. 13, ample evidence of those effects, if any, already existed in the record. At the time of the hearing, the ALJ already had access to Plaintiff's self-reported symptoms through his "Function Report" [AR 223-30], and more

21

importantly, the ALJ possessed the comprehensive consultative examination of Dr. Adams [AR 311-14] as well as the opinions of the non-examining consultative psychologists [AR 48, 61], who unanimously opined that Plaintiff's mental impairments were non-severe. Because Plaintiff has failed to adduce the type of evidence that would suggest the requirement for further investigation, *see Hawkins*, 113 F.3d at 1167, and moreover, because sufficient evidence existed in the record at the time of Plaintiff's hearing to make a disability determination, *see Cowan*, 552 F.3d at 1187, the Court must deny this claim.

### 3.   The ALJ properly applied the Medical-Vocational Guidelines

For his last challenge to the ALJ's mental limitation findings, Plaintiff alleges that the ALJ improperly applied the Medical-Vocational Guidelines, commonly referred to as "the grids." The ALJ found that "[b]ased on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14." AR 91. Plaintiff contends that two errors infect this finding. First, he avers that "because the ALJ's RFC contained error, the step-five finding is error as well." Pl.'s Mot. 14. Additionally, he claims "the grids are only applicable when a claimant's RFC is unaffected by nonexertional limitations," and because Plaintiff's ability to work is affected by his pain and anxiety, "the application of the grids was error." *Id.* at 15.

The Commissioner dismisses Plaintiff's grids challenge as a mere "rehash[ing] [of] his earlier arguments about alleged mental impairments and subjective complaints, which the ALJ found to be non-severe and unreliable respectively." Def.'s Resp. 13. On this count, the Court must agree. This argument is entirely contingent on a finding that Plaintiff possesses nonexertional limitations beyond that currently contained in his RFC. Plaintiff, however, has not

persuaded this Court that the ALJ's RFC finding was in error.  Thus, because the RFC finding is neither erroneous as a matter of law nor unsupported by substantial evidence, this claim fails alongside Plaintiff's other challenges to the ALJ's mental restriction findings.

### C. The Appeals Council Did Not Err By Refusing to Consider Plaintiff's Post-Hearing Evidence

Plaintiff's last argument for remand is that "[t]he Appeals Council refused to admit and consider evidence dated after the date of the ALJ's decision" of August 5, 2014.  Pl.'s Mot. 15.  He believes "[t]his was error, as the reports were new, relevant, and material."  *Id.*

The evidence in question concerns Plaintiff's various physical impairments.  As to his lower back, on August 7, 2014, Plaintiff returned to Dr. Stentiford, where he underwent an x-ray that demonstrated degenerative disc disease at L2-L3.  *Id.* at 16 (citing *id.*, Ex. A at 54).  In September 2014, Plaintiff also reported severe lower back pain to his physical therapist along with severe pain in his right knee.  *Id.* (citing *id.*, Ex. A at 47).  By November of that year, Plaintiff returned to Dr. Stentiford for neck and shoulder pain, and Dr. Stentiford found decreased range of motion, tight muscles, and persistent knee pain, despite the use of injections.  *Id.* (citing *id.*, Ex. A at 10-11, 24-29).  In August 2015, Plaintiff also underwent arthroscopic removal of osteochondral fragments in his right knee.  *Id.* (citing *id.*, Ex. A at 16-19, 65-67).

The Commissioner replies that the records at issue "do not support any changes in the ALJ's RFC finding."  Def.'s Resp. 15.  First, she argues that Plaintiff's post-hearing, subjective complaints of pain "are cumulative of complaints from the relevant period that the ALJ already considered and discounted."  *Id.* (citing AR 88-89).  The Commissioner also contends the x-ray findings of Plaintiff's lower back from August 2014 are cumulative to MRIs examined by the ALJ during the relevant time period.  *Id.* (citing AR 89, 402).  Lastly, as to the surgical intervention in Plaintiff's knee, she avers "the ALJ accounted for knee degeneration and

fragments in [her] decision." *Id.* (citing AR 88-89, 334-35).  In sum, the Commissioner argues that the post-hearing records submitted by Plaintiff are "not material, but rather, cumulative of evidence already considered by the ALJ." *Id.*  Furthermore, she suggests that to the extent the records "show possible deterioration in [Plaintiff's] functioning after the date of the ALJ's decision the proper course of action would be filing new disability applications." *Id.* (citing 20 C.F.R. §§ 404.620(a), 404.976(b)(1) (2016)).

### 1.  Standard for reviewing post-hearing evidence

Pursuant to 20 C.F.R. § 404.970(b), "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).  The Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Id.* (quoting *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).  "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Id.*

Whether evidence submitted to the Appeals Council qualifies as new, material, and chronologically pertinent is a question of law subject to *de novo* review.  *Threet*, 353 F.3d at 1191.  "Evidence is new within the meaning of 404.970(b) if it is not duplicative or cumulative." *Id.* (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Evidence is material to the determination of disability "if there is a reasonable possibility that it would have changed the outcome." *Id.*  Lastly, evidence is chronologically pertinent if it relates to the time period on or before the ALJ's decision.  *Id.*

### 2.  Plaintiff's post-hearing evidence does not qualify for review

Plaintiff's post-hearing records, though illustrative of his post-hearing treatment, do not meet the threshold for invoking the Appeals Council's duty to review.  These records, which can be divided into: (1) right knee; (2) neck and shoulder; and (3) lower back records, each fail the relevant legal standard for the reasons detailed below.

### a.  Plaintiff's right knee

Plaintiff's right knee impairment was considered and addressed at length by the ALJ in her opinion.  She found Plaintiff's osteoarthritis of the knees to be severe, and considered his impairment under Listing 1.02 for major dysfunction of the joint.  AR 87.  Based on his ability to ambulate with only a minimally antalgic gait, however, the ALJ found Plaintiff did not meet the Listing.  AR 87.  The ALJ also considered records from April 2012, August 2012, December 2012, June 2013, October 2013, November 2013, January 2014, and May 2014 concerning Plaintiff's right knee, which contained complaints of continued pain, crepitus, an anterior intra-articular loose body,[13] diminished range of motion, and locking of the knee.  AR 88-89.  This evidence later informed her RFC limiting Plaintiff to light work.

More than a year after the ALJ's decision, on August 25, 2015, Plaintiff underwent surgical intervention to remove "osteochondral fragments" from his right knee.  Pl.'s Mot., Ex. A at 65.  Plaintiff argues this surgery "validated [Plaintiff's] consistent reports of knee pain, weakness, and locking." *Id.* at 17.  Further, he claims it "is material because it shows that, contrary to the ALJ's finding, there is objective evidence supporting [Plaintiff's] claim that his pain affects his ability to stand and/or walk for six hours per workday, which is required for light work." *Id.*

Clearly, the evidence concerning Plaintiff's right knee surgery is new, in that it is not

---

[13] Intra-articular bodies are "[f]ragments of cartilage or bone that may occur free within the joint space." *See* http://uwmsk.org/residentprojects/intraarticularbodies.html (last visited Mar. 23, 2017).

cumulative of prior records entered into the record.  Further, it could arguably be considered chronologically pertinent, as it relates to an ongoing, severe impairment considered by the ALJ as part of her decision.  Nevertheless, the Court cannot find that it is "material" for purposes of finding legal error in the Appeals Council's denial of review.  This Court finds no reason to believe that, had the ALJ had the benefit of these records as part of her consideration, there would have been "a reasonable possibility that it would have changed the outcome."  *Threet*, 353 F.3d at 1191.  In fact, as part of her decision, the ALJ considered records where the symptoms and extent of Plaintiff's knee impairment were voluminously documented, and where Plaintiff opined that his pain was a "constant 10/10."  AR 333.  The ALJ weighed the medical evidence of record, and found that the evidence of Plaintiff's "full flexion of the joint" [AR 88], and "minimally antalgic" [AR 89] gait supported only a restriction to light work, even when considered in tandem with the "[a]nterior intra-articular loose body" noted on Plaintiff's x-rays as early as April 13, 2012.  AR 335.  To argue now that surgical intervention of the condition previously considered by the ALJ would have produced a different result is unpersuasive, and fails under the materiality test of *Threet*.

### b.  Neck and shoulder

Additionally, Plaintiff complains the Appeals Council improperly refused to consider post-hearing evidence concerning his neck and shoulders.  This evidence, which derives from physical therapy encounters on March 2, 2015, and June 2, 2015, demonstrated some reduced range of motion in Plaintiff's shoulder and neck area, coupled with reports of pain and findings of weakness and tenderness.  *See* Pl.'s Mot., Ex. A at 11-12, 24-29.

What Plaintiff fails to show, however, is how these records relate *whatsoever* to conditions that existed during the relevant time period.  Indeed, the only colorably relevant

record available to the ALJ was the "Physical Capacities Evaluation" completed by Dr. Stentiford, wherein he opined that Plaintiff could "frequently" reach above shoulder level.  AR 365.  Beyond this single mention, the record is silent on any impairments related to Plaintiff's neck or shoulders.  Therefore, the evidence submitted by Plaintiff to the Appeals Council concerning his neck and shoulders cannot be said to relate "to the period before the ALJ's decision," and therefore is not chronologically pertinent as a matter of law.  The Appeals Council properly refused to consider this evidence.

### c.  Lower back

Lastly, Plaintiff believes the Appeals Council should have reviewed additional evidence related to his lower back.  The evidence in question stems from a three-view x-ray conducted of Plaintiff's spine on August 7, 2014, where the reviewing physician opined that Plaintiff suffered from "moderate degenerative disc disease L2-L3."[14] Pl.'s Mot., Ex. A at 54.

At the time of the ALJ's decision on August 5, 2014, she had access to numerous records related to Plaintiff's spinal impairments.  These included, *inter alia*, medical records from June 2012, December 2012, June 2013, and October 2013.  AR 88-89.  Notably, the ALJ specifically found Plaintiff's lumbar degenerative disc disease to be a severe impairment.  AR 84.  Accordingly, she considered Plaintiff's spinal impairment under Listing 1.04 for disorders of the spine.  AR 87.  As part of that inquiry, she noted that an MRI of Plaintiff's lumbar spine "showed an annular tear at L5-S1 with multilevel loss of disc height," but also noted the MRI showed "no evidence of stenosis."  AR 87.  The lack of stenosis, coupled with Plaintiff's only "minimally antalgic gait," led the ALJ to conclude that Plaintiff did not qualify under Listing

---

[14] "Degenerative changes in the spine are those that cause the loss of normal structure and/or function. They are not typically due to a specific injury but rather to age. Repeated strains, sprains, and overuse of the back cause a gradual degeneration of the discs of the spine. Nearly everyone experiences some disc degeneration after age 40."  *See* http://my.clevelandclinic.org/health/articles/degenerative-back-conditions (last visited Mar. 21, 2017).

1.04.  AR 87.

The Court finds the records of Plaintiff's August 7, 2014, lumbar x-ray to be new, in that they are not cumulative or duplicative of other evidence of the record.  Furthermore, they are chronologically pertinent because they relate to a condition that existed at the time of the ALJ's decision.  The Court cannot find, however, that these records are "material" for purposes of the *Threet* analysis.  To the contrary, the Court is skeptical that the addition of these records would have persuaded the ALJ to alter her findings or decision in any way.  The ALJ was well aware of Plaintiff's degenerative disc disease, she considered it serious enough to classify it as a severe impairment, and she evaluated it under the relevant Listing.  Ultimately, however, in light of the medical evidence available at the time of her decision and various other factors including Plaintiff's extensive ADLs,[15] the ALJ determined Plaintiff's spinal condition merited only a restriction in Plaintiff's RFC to light work.

A record submitted to the Appeals Council can only be found to be material "if there is a reasonable possibility that it would have changed the outcome."  *Threet*, 353 F.3d at 1191.  That possibility is conspicuously absent here, and this Court will not disturb the Appeals Council's decision.

---

[15] In her opinion, the ALJ noted:

> Despite alleging disabling symptoms, [Plaintiff] has no problem with his personal care needs.  He is also able to prepare complete meals, do house work, chop wood, clean his yard, leave the house alone, drive, go shopping, pay bills, count change, handle a savings account, [ ] use a checkbook . . . [and] is able to walk up to a mile before having to stop and rest.

AR 87.

## VI.    CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 24] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***